UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 3:14-cr-208 |
| v. | ) | |
| | ) | **GOVERNMENT'S MOTION *IN*** |
| **PAUL BURKS** | ) | ***LIMINE* REGARDING DEFENSE** |
| | ) | **EXPERTS** |
| _____ | ) | |

NOW COMES the United States of America, by and through Jill Westmoreland Rose, United States Attorney, and moves this Court *in limine* to limit Defendant's use of the recently produced "Handwritten Notebooks," marked as Defendant's Exhibit 700. The Government requests that Exhibit 700 only be admitted through the Defendant. In support thereof, the Government submits the following:

**PROCEDURAL HISTORY**

1.      On or about August 24, 2012, the Grand Jury sitting in the Western District of North Carolina issued a subpoena to Defendant as custodian of records for Rex Venture Group, LLC d/b/a ZeekRewards.com calling for the production of documents and testimony related to the production of those documents.

2.      That Grand Jury Subpoena, among other things, called for:

   (1) All documents related to the calculation of the daily net profit published on the ZeekRewards web site;

   (2) All documents related to the calculation of the daily profit share awards and profit point redemptions for the Retail Profit Pool

      …

(6) All documents related to any policies and procedures applicable to the

operation of the Retail Profit Pool annotated with their respective dates of

application including, but not limited to, operational manuals, newsleeters,

bulletins, training materials, and memoranda.

   (Ex. A.)

3.      Defendant's Exhibit 700 was not produced in response to that Subpoena.

4.      On or about September 20, 2012, Defendant testified before the Grand Jury for the

Western District of North Carolina as custodian of records of Rex Venture Group, LLC d/b/a

ZeekRewards.com regarding the productions that he had made on behalf of Rex Venture Group,

LLC d/b/a ZeekRewards.com.

5.      During his testimony, Defendant was asked, and testified in response that:

   Q.      I'm just going to go through these and forgive me if I end up
   asking the same question but it's important. I want to get it on the
   record here.  All documents related to the calculation of the daily
   profit share awards and profit point redemption for   the retail profit
   pool. Do you see that, sir?

   A. I see that.

   Q. And same question. The production that you've talked about here
   today, is that responsive in terms of everything you've got in your
   possession to that specification?

   A.      To the best of my knowledge.  There –

   Q.  Again with the caveat that the receiver has a lot of this material?

   A.  Yes

   (Ex. B.)

6.      During his Grand Jury testimony, Defendant never mentioned the Handwritten

Notebooks, Defendant's Exhibit 700.

7.      There can be no legitimate dispute that the Handwritten Notebooks – if they actually existed on the dates they purport to have been created – were responsive to the Grand Jury Subpoena, and, thus, Defendant's failure to produce them was in violation of that Subpoena and his testimony that he had produced all documentation responsive to the subpoena was untrue.

8.      On October 24, 2014, the Grand Jury returned an Indictment charging Defendant with conspiracy to commit mail and wire fraud, substantive counts of mail fraud and wire fraud, and tax fraud conspiracy.

9.      On November 13, 2014, the Court, Honorable David S. Cayer, United States Magistrate Judge, issued the Standard Criminal Discovery Order for the Western District of North Carolina.  That Order, among other things, requires that "[a]t such time as the government provides defense counsel with discovery under Rule 16(a)(1), defense counsel shall provide the government with reciprocal discovery under Rule 16(b)(1), as requested by the government's Open-File Policy."

10.     The Government promptly began providing discovery consistent with the Court's Standard Discovery Order and its Expanded File Discovery Policy, and with each production requested reciprocal discovery from Defendant.

11.     On or about April 8, 2016, Defendant notified the Government for the first time that he purportedly had handwritten notebooks, dating from the year 2011, which had not been produced.

12.     Those documents were first produced to the Government on or about April 8, 2016.

13.     Defendant's failure to produce these documents in response to the Grand Jury testimony, his testimony that he had produced all responsive documents, and the production of

these Handwritten Notebooks on the eve of trial, without explanation, all raise serious concerns about the legitimacy of the Handwritten Notebooks.

14.      Nevertheless, Defendant has marked the Handwritten Notebooks as Defendant's Exhibit 700. Further, on June 22, 2016, Defendant provided copies of the expert reports of John White and Morrie Aaron, which include innumerable references to and reliance upon the "Handwritten Notebooks." These reports suggest that Defendant improperly intends to use his experts as a conduit to introduce the unauthenticated Handwritten Notebooks and use them to offer (improper) opinions regarding Defendant's state of mind at the time of the offense.

**ARGUMENT**

15.      Absent testimony from Defendant, the Handwritten Notebooks (Defendant's Exhibit 700) are inadmissible pursuant to Federal Rules of Evidence ("Rule") 103(d) and 901(a) for lack of authentication. They are also inadmissible as they contain hearsay not subject to an exception in violation of Rules 103(d) and 802.

16.      Thus, first, absent testimony from Defendant laying a proper foundation pursuant to Rule 602 and authenticating the Handwritten Notebooks, he should be precluded from referencing the Handwritten Notebooks during the examinations of witnesses (other than himself, should he chose to testify). Put simply, without Defendant's testimony, there is no "'connection between the external facts [the Handwritten Notebooks] and the defendant's state of mind'" and absent such connection, "'the evidence of the external facts is not relevant.'" *See United States v. Zayyad*, 741 F.3d 452, 460 (4th Cir. 2014) (quoting *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1985).) As the Fourth Circuit has made clear "a defendant's rights 'would not be violated simply because he had to choose between not testifying and laying [the required] foundation.'" *See id*. at 461 (quoting *United States v. Kokenis*, 662 F.3d 919, 927 (7th Cir.

2011).) "'That the defendant faces a dilemma demanding a choice between complete silence and presenting a defense has never been though an invasion of the privilege against compelled self-incrimination.'" *See id*. (quoting *United States v. Kelley*, 592 F.3d 586, 594 (4th Cir. 2010).) In short, Defendant "cannot use the privilege against self-incrimination as a means to free himself from the basic rules of relevancy." *See id*.

17.    Second, as will be set forth in more detail in the Government's Motion *in Limine* Regarding Defense Experts, Defendant's experts likewise should be precluded from relying upon or referencing the Handwritten Notebooks, absent testimony from Defendant laying a proper foundation and authenticating the Handwritten Notebooks. To allow otherwise would, *inter alia*, run afoul of Rule 704(b) which prohibits an expert from testifying about "opinion[s] or inference[s] as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged," Fed. R. Evid. 704(b), and similarly bars expert opinion that necessarily assumes whether the defendant did or did not have a particular mental state. *See United States v. Shaffer*, 472 F.3d 1219, 1225 (10th Cir. 2007) (district court properly excluded expert testimony that "sought to suggest to the jury, at the very least by inference, that [defendant] did not *knowingly* possess or distribute unlawful child pornography as opposed to simply adult pornography" based upon file structure of defendant's computer). *See also United States v. Fowler*, 932 F.23d 306, 315 (4th Cir. 1991). This is particularly important here, where Defendant's failure to produce the Handwritten Notebooks and his prior Grand Jury testimony regarding his compliance with the subpoena for documents casts serious doubt as to when those Handwritten Notebooks were created and the circumstances surrounding their creation.

18.    Moreover, to the extent that the Handwritten Notebooks were in fact contemporaneous notes of Defendant taken in 2011 as he now asserts, failure to produce them in

response to the August 2012 Grand Jury Subpoena gives rise to potential contempt proceedings under 18 U.S.C. § 401 and Rule 42 of the Federal Rules of Criminal Procedure. The Government is not seeking to institute contempt proceedings, but instead requests that, consistent with the Federal Rules of Evidence, the Court preclude Defendant from admitting or using the Handwritten Notebooks, unless or until he testifies at trial and lays a proper foundation and authenticates the Handwritten Notebooks through his testimony.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court preclude Defendant from using the handwritten notebooks marked as Defendant's Exhibit 700 unless Defendant elects to testify.

RESPECTFULLY SUBMITTED this 28th day of June, 2016.

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

**<u>s/ Jenny Grus Sugar</u>**
Jenny Grus Sugar
Assistant United States Attorney
Bar: State of State of New York
Attorney for the United States
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (office)
(704) 344-6629 (facsimile)
jenny.sugar@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, the foregoing document was served

electronically through ECF filing upon the defendant through counsel of record

s/Jenny G. Sugar
JENNY G. SUGAR
ASSISTANT UNITED STATES ATTORNEY