UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cr-208-MOC-1

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Vs.** | ) | ORDER |
| | ) | |
| | ) | |
| **PAUL BURKS,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Emergency Motion for Compassionate Release/Reduction of Sentence and on Defendant's Supplemental Motion for Compassionate Release/Reduction of Sentence. (Doc. Nos. 164, 167). Defendant is currently incarcerated at FMC Lexington in Lexington, Kentucky. The Government has responded in opposition to the motion. Defendant is represented by attorney Noell Tin.

**I.  BACKGROUND**

In October 2014, a grand jury indicted Defendant Paul Burks on federal charges for operating an $850 million internet Ponzi scheme known as ZeekRewards. On July 21, 2016, Defendant was convicted on all charges following a three-week jury trial. As established at trial, from January 2010 through August 2012, Defendant owned Zeekler, a sham, internet-based penny auction company, and its purported advertising division, ZeekRewards. Defendant and his conspirators induced victims—including over 1,500 victims in the Charlotte area—to invest in their fraudulent scheme by falsely representing that Zeekler was generating massive retail profits from its penny auctions and that the public could share in such profits through investment

1

in ZeekRewards. Defendant claimed that investors would be guaranteed a 125% return on their investment. Defendant and his conspirators represented that victim-investors in ZeekRewards could participate in the Retail Profit Pool (RPP), which supposedly allowed victims collectively to share 50% of Zeek's daily net profits. Defendant did not keep books and records needed to calculate such daily figures and simply made up the daily "profit" numbers. The true revenue from the scheme did not come from the penny auction's "massive profits." Instead, approximately 98% of all incoming funds came from victim-investors, which were then used to make Ponzi-style payments to earlier victim investors.

In February 2017, this Court sentenced Defendant to 176 months of imprisonment. During the hearing, the Court considered Defendant's age and health conditions and used those factors as a basis to vary downward from the advisory sentencing guidelines range. Defendant has served approximately 38 months of that sentence (approximately 22%). He now moves under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP), relying on the threat posed by the COVID-19 pandemic. Defendant requested Compassionate Release with the BOP by correspondence dated March 25, 2020. The BOP deemed Defendant ineligible for release based on being elderly or elderly with medical conditions criteria because he had only served 20% of his sentence. The BOP then considered whether his release under the statute was appropriate based on either meeting the criteria of (1) Medical: Debilitated or (2) Medical Terminal. The BOP reviewed his medical records and determined him ineligible under either of these criteria. The warden at FMC Lexington denied Defendant's request, stating that Defendant did not satisfy the medical components as specified in the program statement.

On May 12, 2020, Defendant filed a motion with this Court seeking compassionate

2

release under 18 U.S.C. § 3582(c)(1)(A) on the ground that his age and medical conditions place him among the population most at-risk for COVID-19. (Doc. No. 164, p. 3). On May 15, 2020, Defendant filed a motion to stay his motion for compassionate release because he was being considered for home confinement release. (Doc. No. 165). On June 5, 2020, Defendant filed a motion to lift the stay. (Doc. No. 166). On July 13, 2020, Defendant filed a supplemental motion seeking compassionate release, noting that Defendant had contracted COVID-19 and recovered but remained at risk and that his administrative remedies had been exhausted. (Doc. No. 167). During this time period, Defendant tested positive for COVID-19, received treatment for minor symptoms, and has recovered.

## II. DISCUSSION

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that the BOP file such a motion on his or her behalf. Id. A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id.

If the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish

3

that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under 18 U.S.C. § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[1] The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[1] The policy statement refers only to motions filed by the BOP Director. This is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under Section 3582(c). See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; cf. 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by the BOP, the policy statement applies to motions filed by defendants as well.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).  The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances.  U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).  Finally, the note recognizes the possibility that the BOP could identify other grounds that amount to "extraordinary and compelling reasons."  U.S.S.G. § 1B1.13, cmt. n.1(D).

The Court denies Defendant's request for a sentence reduction because he has not demonstrated "extraordinary and compelling reasons" warranting release.  As explained above, under the relevant provision of Section 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions.  U.S.S.G. § 1B1.13, cmt. n.1(A).

To state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement.  Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. 1B1.13, cmt. n.1(A).  If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore

5

could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant is 73 years old and suffers from numerous medical conditions, including heart disease, diabetes, and hypertension. However, Defendant cannot meet his burden of establishing that his risk of contracting COVID-19 is an extraordinary and compelling reason for a sentence reduction when he has already contracted COVID-19, has successfully undergone treatment in the BOP, and has recovered. Furthermore, Defendant has not shown that FMC Lexington is unequipped to provide appropriate medical care or that he faces guaranteed superior care outside of custody.

As the Government notes, CDC experts do not yet know how long COVID-19 immunity might last following infection. The Court agrees with the Government, however, that it is

6

reasonable for the Court to find that Defendant is not at risk of infection for some time. In any event, Defendant cannot now meet his burden of establishing that his risk is extraordinary and compelling because he has already contracted the virus and escaped unscathed. For these reasons, Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under Section 3582(c).

Alternatively, Defendant's request for a sentence reduction is denied because he has failed to demonstrate that his release is merited under the Section 3553(a) factors. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Additionally, this Court must consider the Section 3553(a) factors, as "applicable," as part of its analysis. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). At Defendant's sentencing, this Court addressed the seriousness of the offense and the need for deterrence at sentencing and weighed those against Defendant's health conditions. The Court determined that, notwithstanding the financial burden on taxpayers for treating Defendant's health conditions, the sentence imposed was appropriate, given that Defendant's conduct was extremely serious and hurt many victims. As noted, Defendant has served only roughly 22 percent of his sentence. Justice would not be served by releasing Defendant at this time. In light of Defendant's record and the totality of relevant circumstances, this Court will, therefore, alternatively deny the motion for a sentence reduction under the Section 3553(a) factors.

Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Emergency Motion for Compassionate Release/Reduction of Sentence and Defendant's Supplemental Motion for Compassionate Release/Reduction of Sentence, (Doc. Nos. 164, 167), are **DENIED**.

Signed: August 21, 2020

Max O. Cogburn Jr.
United States District Judge