UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cr-208-MOC-1

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| PAUL BURKS, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Emergency Motion for Compassionate Release/Reduction of Sentence and on Defendant's Supplemental Motion for Compassionate Release/Reduction of Sentence. (Doc. Nos. 164, 167). Defendant is currently incarcerated at FMC Lexington in Lexington, Kentucky. The Government has responded in opposition to the motion. Defendant is represented by attorney Noell Tin.

**I. BACKGROUND**

In October 2014, a grand jury indicted Defendant Paul Burks on federal charges for operating an $850 million internet Ponzi scheme known as ZeekRewards. On July 21, 2016, Defendant was convicted on all charges following a three-week jury trial. As established at trial, from January 2010 through August 2012, Defendant owned Zeekler, a sham, internet-based penny auction company, and its purported advertising division, ZeekRewards. Defendant and his conspirators induced victims—including over 1,500 victims in the Charlotte area—to invest in their fraudulent scheme by falsely representing that Zeekler was generating massive retail profits from its penny auctions and that the public could share in such profits through investment

1

in ZeekRewards. Defendant claimed that investors would be guaranteed a 125% return on their investment. Defendant and his conspirators represented that victim-investors in ZeekRewards could participate in the Retail Profit Pool (RPP), which supposedly allowed victims collectively to share 50% of Zeek's daily net profits. Defendant did not keep books and records needed to calculate such daily figures and simply made up the daily "profit" numbers. The true revenue from the scheme did not come from the penny auction's "massive profits." Instead, approximately 98% of all incoming funds came from victim-investors, which were then used to make Ponzi-style payments to earlier victim investors.

In February 2017, this Court sentenced Defendant to 176 months of imprisonment. During the hearing, the Court considered Defendant's age and health conditions and used those factors as a basis to vary downward from the advisory sentencing guidelines range. On May 12, 2020, Defendant filed his motion under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP), on the ground that his age and medical conditions place him among the population most at-risk for COVID-19. (Doc. No. 164, p. 3). On May 15, 2020, Defendant filed a motion to stay his motion for compassionate release because he was being considered for home confinement release. (Doc. No. 165). On June 5, 2020, Defendant filed a motion to lift the stay. (Doc. No. 166). On July 13, 2020, Defendant filed a supplemental motion seeking compassionate release, noting that Defendant had contracted COVID-19 and recovered but remained at risk and that his administrative remedies had been exhausted. (Doc. No. 167).

On August 21, 2020, this Court issued an order denying Defendant's motion for compassionate release. (Doc. No. 179). Defendant appealed the Court's order to the Fourth Circuit Court of Appeals. While Defendant's appeal was pending, on January 5, 2021, BOP

2

Case 3:14-cr-00208-MOC-DSC   Document 193   Filed 04/13/21   Page 2 of 9

administered to Defendant the first dose of the COVID-19 vaccine produced by Moderna. On February 2, 2021, BOP administered the second dose to Defendant. Thus, Defendant has now been fully vaccinated. On February 11, 2021, the Fourth Circuit remanded the case to this Court in light of the Fourth Circuit's decision in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). (Doc. No. 185).

On March 29, 2021, Defendant filed a supplemental motion for compassionate release, raising four purported extraordinary and compelling reasons for release. (Doc. No. 191). First, Defendant makes two arguments based on the COVID-19 pandemic, despite the fact that he has already had and recovered from COVID-19 with minor symptoms and is now fully vaccinated against COVID-19, having received both doses of the Moderna vaccine. Second, Defendant raises two issues that were already addressed during his original sentencing hearing: sentencing disparity and the potential that he may die in prison.

## II. DISCUSSION

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. The Sentencing Commission has issued a policy statement addressing reduction of sentences under Section 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the sentencing factors listed in 18 U.S.C. § 3553(a) if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if

3

the defendant is "suffering from a terminal illness," such as "metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii) (emphasis added). The application note sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Recently, in United States v. McCoy, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates (as opposed to the Director of BOP) under 18 U.S.C. § 3582(c)(1)(A)(i). 981 F.3d 271, 275 (4th Cir. Dec. 2, 2020); see also United States v. Brooker, 976 F3d 228, 234–35 (2d Cir. 2020); United States v. Jones, 980 F.3d 1098, 1108–09 (6th Cir. 2020). In reaching its decision, the Fourth Circuit reasoned that because Section 1B1.13 addresses only motions brought by the BOP, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. at 281–82. Instead, courts are free to make their own independent determinations of what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A), as consistent with the statutory language. Id. Nonetheless, the Fourth Circuit advised that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. In stating as such, McCoy approvingly cited the Seventh Circuit's recent decision in United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020), which

4

similarly held that there currently exists no applicable policy statement for compassionate release motions brought by inmates.

The Seventh Circuit explained that Section 1B1.13 remains useful in framing a court's inquiry as to what constitutes "extraordinary and compelling reasons." As that court stated,

> [t]he statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii). The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive.

Id. (citing Gall v. United States, 552 U.S. 38, 49–50 (2007); Kimbrough v. United States, 552 U.S. 85 (2007)). Thus, although McCoy broadened district courts' discretion under Section 3582(c)(1)(A), it nonetheless appeared to envision a system whereby courts generally continue to operate within the traditional discretionary framework set forth under Section 1B1.13. This Court has adopted the use of the Section 1B1.13 framework in reviewing requests for compassionate release post-McCoy noting that it is "extremely helpful in assessing motions for compassionate release." United States v. Hallman, No. 3:12-CR-00097-MOC, 2021 WL 796151, at *2 (W.D.N.C. Mar. 2, 2021).

Here, Defendant, who is now 74, raises four purported "extraordinary and compelling reasons" for compassionate release: (1) COVID-19 is a continuing threat to elderly and infirm inmates like Defendant, who suffers from numerous medical conditions, including heart disease, diabetes, and hypertension; (2) when this Court sentenced Defendant, it did not envision conditions this harsh; (3) a reduction is necessary to address unwarranted sentencing disparities; and (4) Defendant is unlikely to survive his current sentence. The Court finds that these arguments do not constitute extraordinary and compelling reasons for granting Defendant's

5

motion for compassionate release.

     First, the continued threat of COVID-19 is not an extraordinary and compelling reason for release. As noted, Defendant previously contracted COVID-19 and recovered with minimal symptoms. Furthermore, since filing his motion for compassionate release, Defendant has also been fully vaccinated for COVID-19. As the Government has explained, the pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The Government has acknowledged that an unvaccinated inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents such a condition. That circumstance does not exist in this case, as Defendant has now received a vaccine approved by the FDA based on its conclusion that, in extensive testing, the vaccine reduced the rate of infection by approximately 95%, and was virtually entirely effective in preventing severe disease, including in participants with medical comorbidities associated with high risk of severe COVID-19. See FDA Decision Memorandum, Moderna - Dec. 18, 2020, https://www.fda.gov/media/144673/download. Thus, by accepting vaccination, Defendant has provided effective "self-care" against the virus and does not present any extraordinary and compelling reason allowing compassionate release. See, e.g., United States v. Smith, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("According to the CDC, the Moderna vaccine is exceptionally safe and effective, preventing 94.1% of infections in clinical trials. . . . Accordingly, absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").

As the Government notes, scientific consensus may shift if vaccine-resistant variants emerge or the vaccines prove less efficacious than studies to date suggest. If those possibilities materialize, Defendant may certainly file another motion for compassionate release. At this time, however, the prevailing scientific view is that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus. Given that Defendant has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition that is terminal or severely limits his ability to function in a correctional setting. Likewise, harsh conditions in BOP due to the pandemic do not create an extraordinary and compelling reason for release. Every inmate in BOP has faced restrictions on movement and elevated health protocols in response, just as the freedoms of non-incarcerated individuals have been limited due to the pandemic. However, Defendant's restrictions are not extraordinary.

Nor has Defendant shown extraordinary and compelling circumstances warranting early release based on sentencing disparities between himself and his co-defendants. First, the Court addressed such disparities at Defendant's sentencing hearing. Defendant's two co-defendants, who both pled guilty and gave substantial assistance to the government, were sentenced before him, and this Court considered their sentences when sentencing Defendant. This Court presided over Defendant's trial and was very familiar with the roles of his co-conspirators. Certainly, "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct" is an important consideration under 18 U.S.C. § 3553(a)(6). The Government spent considerable time during Defendant's sentencing addressing the issue. Specifically, the Government introduced evidence regarding the sentences given to other fraud defendants in their sixties and seventies in other Western District of North Carolina cases, as well as the sentences given to other Ponzi scheme defendants nationwide who were in

their sixties and seventies at the time of their sentencings. The Court considered these sentences in imposing Defendant's own sentence, and the Court concluded that the sentence would not result in an unfair disparity.[1]

Finally, Defendant's argument that he is unlikely to survive his current sentence is not an extraordinary and compelling circumstance warranting early release. Significantly, the Court contemplated this possibility at the time of Defendant's sentencing and nevertheless found that the sentence was warranted. As was discussed during sentencing, Defendant was the leader of an $800 million Ponzi scheme—one of the largest Ponzi schemes, based on the number of victims, in history. Through ZeekRewards, he defrauded hundreds of thousands of investors of more than $800 million. Many victims of the scheme lost their life savings and faced dire financial straits as a result of Defendant's fraud. The fact that Defendant chose to steal money from his victims while in his sixties, and is therefore facing imprisonment until he is into his eighties,[2] is simply a consequence he must face for his actions.[3] At Defendant's sentencing, this Court addressed the seriousness of the offense and the need for deterrence at sentencing and weighed those against Defendant's age and health conditions. Defendant has simply not presented anything warranting a deviation from the Court's reasoning in imposing Defendant's

---

[1] Defendant points to sentences recently imposed by a court in the District of Columbia, given to two individuals who operated an "e-wallet" used by Defendant and ZeekRewards, and argues that there is an unfair disparity between Defendant's sentence and those persons. The Court disagrees. Those two individuals served as money launderers for some of Defendant's illegal proceeds, pled guilty, and were not in the role of convincing hundreds of thousands of investors to send money to a scam penny auction.

[2] The BOP website indicates that Defendant's release date is February 15, 2028.

[3] Furthermore, as the Government notes, the BOP has a specific policy governing release of elderly defendants who have medical conditions. The BOP is in a better condition than the Court to determine whether Defendant's medical conditions necessitate an early release. See https://www.bop.gov/resources/pdfs/2019_compassionate_release_cpg.pdf.

sentence.

For all these reasons, Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under Section 3582(c). Additionally, Defendant's request for a sentence reduction is denied because he has failed to demonstrate that his release is merited under the Section 3553(a) factors. <u>See</u> 18 U.S.C. § 3582(c)(1)(A); <u>United States v. Chambliss</u>, 948 F.3d 691, 694 (5th Cir. 2020).

Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Emergency Motion for Compassionate Release/Reduction of Sentence and Defendant's Supplemental Motion for Compassionate Release/Reduction of Sentence, (Doc. Nos. 164, 167), are **DENIED**.

Signed: April 13, 2021

Max O. Cogburn Jr
United States District Judge